OPINION OF THE COURT
David B. Saxe, J.
The issue that I must resolve in this small claims case is: Whether a modification of a contract between a merchant and a consumer for the sale of a new automobile under which the consumer is obligated to pay an increased price over that specified in the original contract of sale to be entitled to obtain delivery and possession of the vehicle, is a bad-faith modification of the original contract under the provisions of the Uniform Commercial Code which, may accordingly entitle the buyer to recover damages.
The essential facts are not in dispute. On February 6, 1980, Dr. Leonard Palmer, an optometrist who lives in the Manhattan Beach section of Brooklyn, New York, entered into a contract for the purchase of a 1980 Toyota Tercel, deluxe model with Safe Auto Sales, Inc. of Coney Island *965 Avenue in Brooklyn. The total price of the car was $5,822.04. Dr. Palmer paid a $100 deposit, the balance to be paid at the time of delivery. During the second week of March, 1980, Dr. Palmer was informed that a car was available which included a rear wiper not specified in the original agreement. In other respects, the car conformed to the contract. Safe Auto told Dr. Palmer that if he wanted to take delivery of the car, he would have to pay an additional charge for the rear wiper. Dr. Palmer was also informed that a “body molding” not agreed upon in the written agreement was added to the car in stock and would cost an additional $45, if desired. On March 18, 1980, Dr. Palmer accepted and paid for a 1980 Toyota Tercel Model 1382 including rear wiper, totaling $75, body molding totaling $45, as well as a price adjustment of $150 reflecting the increase in cost to the dealer between the time of ordering and date of delivery together with applicable sales tax. Dr. Palmer claims that he has been overcharged by the defendant in the amount of $291 representing the costs of the two additional items, the price increase and the additional tax.
This dispute, arising out of a contract for the sale of an automobile, is governed by article 2 (Sales) of the Uniform Commercial Code (see Uniform Commercial Code, §§ 2-102, 1-102, 1-104).
It is the defendant’s contention that the alleged overcharge was in fact a valid modification of the original sales contract enforceable pursuant to subdivision (1) of section 2-209 of the Uniform Commercial Code. Alternatively, defendant contends that Dr. Palmer could have rejected the car containing the two “extras” and the price increase, but not having done so, must be deemed to have accepted it. (See Uniform Commercial Code, § 2-607, subd [2].)
For his part, Dr. Palmer testified that he was in need of a car and that when he was informed that a more expensive model (due to extras and a price increase) was in stock and available, he felt that he had no choice but to take delivery by paying the higher price. Otherwise, he thought, there would be further delay in obtaining a car conforming to the description and price originally agreed upon.
*966 It is undisputed by either party that the defendant did not perform according to the terms of the original contract. The primary issue to be resolved, therefore, is whether that original contract was effectively modified by a subsequent agreement between the parties enforceable pursuant to subdivision (1) of section 2-709 of the Uniform Commercial Code. At common law, the rule was that where a party did or promised to do what he was already legally obligated to do, there existed no sufficient consideration to support this new promise. (Calamari and Perillo, Contracts, § 4-7.) This rule was known as the pre-existing duty rule. Applied to the facts of this case, it would appear to bar Dr. Palmer’s promise to pay an additional amount for delivery of the same vehicle that he had ordered or one differing in an immaterial respect only.
The code has eliminated the “pre-existing duty” rule in sales contracts (Uniform Commercial Code, § 2-209, subd [1]). It has been generally recognized that contract modification is a common business practice. “Experience has proven to us time and again that instability in economic • conditions, législative enactment, administrative fiat, and a change of heart can cause the parties to a contract for the sale of goods to have second thoughts about their original contract. It is a common, everyday business occurrence that one or both of the parties feel the necessity to modify their contract.” (2 Williston, Sales [4th ed], § 12-4, p 8.) To assure contracting parties the ability to freely adapt to changing circumstances, the code framers in subdivision (1) of section 2-209 of the Uniform Commercial Code rejected and displaced the restrictive common-law pre-existing duty rule, which barred the enforcement of a contract modification without additional consideration supplied by the promisee — the party seeking to enforce the modification. (Hillman, Policing Contract Modifications Under The UCC: Good Faith and the Doctrine of Economic Duress, 64 Iowa L Rev 849.) Modification of sales contracts are consequently expressly authorized and no consideration is necessary to support the modification. {Ibid; see, also, Calamari and Perillo, Contracts, § 5-14.) The modifications must however be in writing (Uniform Commercial Code, *967 § 2-209, subd [2]) and additionally must be made “in good faith”. (Uniform Commercial Code, § 2-209, Comment 2.)
The standard of “good faith” is defined in two separate places in the code (Uniform Commercial Code, § 1-201, subd [19]; § 2-103, subd [1], par [b]) — a circumstance which has created an issue with regard to which definition should be applied in particular situations. (See, generally, Hillman, id., 64 Iowa L Rev 849, 858-859.) Subdivision (19) of section 1-201 of the Uniform Commercial Code provides that: “ ‘Good faith’ means honesty in fact in the conduct or transaction concerned.” A more stringent standard appears in section 2-103 (subd [1], par [b]), as follows: “ ‘Good faith’ in the case of a merchant means honesty in fact and the observance of reasonable commerci al standards of fair dealing in the trade.”
In determining the proper standard to be used, the respective prefaces to subdivision (19) of section 1-201 and section 2-103 (subd [1], par [b]) of the Uniform Commercial Code are significant. Subdivision 19 of section 1-201 begins as follows: “Subject to additional definitions contained in the subsequent Articles of this Act which are applicable to specific Articles or Parts thereof, and unless the context otherwise requires”. Section 2-103 (subd [1], par [b]) on the other hand, begins: “In this Article [article 2] unless the context otherwise requires”.
In this action, the application of the stricter standard of good faith contained in section 2-103 (subd [1], par [b]) appears warranted. The contract of Sale here is governed by article 2 of the Uniform Commercial Code, an article which contains its own definition of good faith. In addition, the party against whom violation of the good-faith standard has been asserted, is a “merchant” (Uniform Commercial Code, § 2-104, subd [1]). Section 2-103 (subd [1], par [b]) of the Uniform Commercial Code makes its good-faith standard specifically applicable to merchants. Finally, and most importantly, Comment 2 to section 2-209 of the Uniform Commercial Code — the section upon which the defendant relies — states that modifications made under that section,
“must meet the test of good faith imposed by this Act * * *
*968 “The test of ‘good faith’ between merchants or as against merchants includes ‘observance of reasonable commercial standards of fair dealing in the trade’ (Section 2-103), and may in some situations require an objectively demonstrable reason for seeking a modification.”
It is clear, therefore, that the “context” of this dispute requires application of the stricter section 2-103 (subd [1], par [b]) standard in determining whether the modification of the contract was entered into in good faith by the defendant.
The issue then is whether the modification of the original sales contract has met the good-faith standard of section 2-103 (subd [1], par [b]) of the Uniform Commercial Code, viz.,’ the observance of reasonable commercial standards of fair dealing in the trade.
It is undisputed that the claimant could not have taken delivery of the vehicle in question unless he paid the increased cost demanded. Further, the claimant testified that he had need for a car. It was further established that the price increase was in part, due to a manufacturer’s cost increase that was passed on to the dealer. However, this attempt, rather than enhancing the defendant’s profit on the contract, merely enabled him to maintain his original profit margin.
As noted earlier, modifications made pursuant to subdivision (1) of section 2-209 of the Uniform Commercial Code must meet the test of good faith imposed by the code. Comment 2 to section 2-209 provides that: “The test of ‘good faith’ between merchants or as against merchants includes ‘observance of reasonable commercial standards of fair dealing in the trade’ (Section 2-103), and may in some situations require an objectively demonstrable reason for seeking a modification.” The comment further provides, however, that “such matters as a market shift which makes performance come to involve a loss may provide such a reason”.
Although the comment does not specifically state, it would appear that a modification of a sales price term arising out of a market shift will generally be held enforceable only in a context involving “merchants”. The court, in *969 United States for Use & Benefit of Crane Co. v Progressive Enterprises (418 F Supp 662, 664), observed in a case involving merchants that: “In the context of a lengthy, ongoing business relationship, seeking modification of a sales price is not uncommon and, given increased costs, is a fair method of doing business in order to preserve the desirability of the relationship for both parties. In such a situation, the parties must be able to rely on objective, unequivocal manifestations of assent.”
However, while such a modification might be expected in a sales transaction between merchants, a different rule is appropriate where one of the parties is a consumer. A merchant “means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction” (Uniform Commercial Code, § 2-104, subd [1]). I hold that where, as here, a sophisticated merchant attempts to coerce* a consumer into asserting and paying for a price increase for the vehicle that had previously been contracted for, such a modification does not meet the good-faith requirement of article 2 of the Uniform Commercial Code. The consumer who purchases goods, such as an automobile, makes, it is presumed, a reasoned decision based among other things upon price factors and the necessity of receiving delivery of the vehicle within certain time parameters. The purchase of an automobile entails a large expenditure for the average consumer. It is not a transaction undertaken frequently. Therefore, having signed a contract and furnished a deposit, the consumer reasonably believes that he has contracted for a vehicle at a price certain. The attempt by the dealer to exact a further charge to reflect a price increase to it, is an unfair and manifestly unreasonable requirement. In short, it is a modification lacking in good faith. (Uniform Commercial Code, § 2-103, subd [1], par [b]; see, *970 generally, 1 Squillante and Fonseca, Modern Commercial Practices, § 2:14.) The duty of “honesty in fact” is the standard by which all commercial transactions are judged. Good faith is not merely an ideal which is devoutly to be desired but is in fact an obligation which is as much a part of any agreement or contract as are the obligations created by agreement of the parties. In fact, the obligation of good faith takes priority over the obligations which the parties may have created. (Ibid.)
While the modification to reflect the price increase might be deemed a modification “honest in fact,” I hold that the modification does not conform to the additional standard relevant to this transaction, i.e., “the observance of reasonable commercial standards of fair dealing in the trade” (Uniform Commercial Code, § 2-103, subd [1], par [b]). The transaction must be viewed in the totality of the circumstances: a price increase modification in the context of a single consumer transaction as opposed to one in “a lengthy, on-going business relationship” between merchants. (United States for Use & Benefit of Crane Co. v Progressive Enterprises, supra, at p 664.) If both parties were merchants, I would hold otherwise.
Having found the modification here with respect to the price hike to have not been made in good faith, I will disregard it. The remainder of the modified contract dealt with the increased price for two “extras” contained in the automobile actually delivered to the claimant. Here too, I find that the modification was made in bad faith. To say that the dealer is not bound to deliver the car ordered by the consumer is to encourage sharp practice in the marketplace such as the substitution on a “take it or leave it basis” of more expensive goods for those specified in the original contract. This is a practice not to be encouraged. A consumer is entitled to receive the car he ordered within a reasonable period of time from the date of order, at the price specified. A certain amount of negotiation surrounds the fixing of a price, but once done, the transaction ceases to be negotiable. Simply put, the defendant and presumably other dealers and manufacturers appear to wish the transaction to retain a sufficient degree of elasticity to enable the dealer to substitute whatever car is available to *971 the consumer. No testimony was offered by the defendant that market conditions prevented it from honoring its contractual obligation to Dr. Palmer. I therefore find that the dealership was obligated to deliver the car offered to Dr. Palmer at the original price. The modification of the price, to take into account the two “extras” was, I hold, a bad-faith modification.
Therefore, I am confronted with a situation where the defendant has not performed according to his obligations under the original contract. (Uniform Commercial Code, § 2-714.)
As noted earlier, defendant asserts that a finding that the contract modification was made in bad faith, and therefore not enforceable, is irrelevant. Relying upon subdivision (2) of section 2-607 of the Uniform Commercial Code, the defendant contends that Dr. Palmer could have rejected the car containing the two “extras” and the price increase, but not having done so, he must be deemed to have accepted it.
Subdivision (2) of section 2-607 of the Uniform Commercial Code states: “Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this Article for non-conformity” (emphasis supplied.) (See, also, Fablok Mills v Cocker Mach. & Foundry Co., 125 NJ Super 251, revg 120 NJ Super 350.)
Having accepted the new car, claimant may nevertheless seek “any other remedy” provided by the Uniform Commercial Code for “non-conformity.” Claimant seeks damages in the sum of $291 arising out of defendant’s bad-faith modification of the sales contract herein.
Subdivision (1) of section 2-714 of the Uniform Commercial Code states: “Where the buyer has accepted goods and given notification (subsection (3) of Section 2-607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller’s breach as determined in any manner which is *972 reasonable” (emphasis supplied). This section then provides for a buyer’s damages for breach after the goods have been accepted and the time for revocation of acceptance has passed. It generally contemplates a buyer’s action for breach of warranty. However, Comment 2 to section 2-714 of the Uniform Commercial Code elaborates on the meaning to be accorded the term “non-conformity” as follows: “The ‘non-conformity’ referred to in subsection (1) includes not only breaches of warranties but also any failure of the seller to perform according to his obligations under the contract.”
In light of my finding that the modification was obtained in bad faith and therefore not enforceable, defendant’s performance under the original contract represents a “nonconformity” within the definition provided by Comment 2.
The requirement in subdivision (1) of section 2-714 of the Uniform Commercial Code that claimant give notification to the defendant pursuant to subdivision (3) of section 2-607 has also been met. Subdivision (3) requires notification “within a reasonable time” after discovery of the breach. Comment 4 to section 2-607 of the Uniform Commercial Code states that: “The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer’s rights under this section must include a clear statement of all the objections that will be relied on by the buyer * * * Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer’s rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.”
Defendant can hardly claim that it was not given notification of the nature of its breach which gave rise to the present litigation. Claimant’s delay in initiating the within action is irrelevant; his right to a remedy pursuant to subdivision (2) of section 2-607 and subdivision (1) of section 2-714 of the Uniform Commercial Code was pre *973 served at the time of the delivery of the nonconforming automobile.
In turn, claimant is entitled to damages pursuant to subdivision (1) of section 2-714 of the Uniform Commercial Code, based upon a “non-conformity” in the form of a bad-faith modification of the original sales contract.
I further hold that the Uniform Commercial Code implicitly authorizes a buyer’s action for damages based simply upon that section of the code which requires that: “Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement.” (Uniform Commercial Code, § 1-203.)
Subdivision (2) of section 1-106 of the Uniform Commercial Code states conclusively that: “Any right or obligation declared by this Act is enforceable by action unless the provision declaring it specifies a different and limited effect.” Therefore, the breach by the seller of its good-faith obligation imposed by the code gives rise to a remedy in favor of the aggrieved party.
One commentator in this area disputes the interpretation of the good-faith requirement as being merely directive because it states no grounds for granting remedial relief. (1 Squillante and Fonseca, Modern Commercial Practices.)
The authors assert that:
“This interpretation of the good faith requirement is not only inconsistent with the directive of UCC Sec. 1-106(2), but also is unsupported by the weight of judicial decisions regarding the remedies available under the good faith obligation. Indeed, it would appear to be unreasonable for the Code to designate good faith as an obligation if in fact it were not enforceable.
“Surely any obligation imposed by law or agreement which has no remedy for a breach cannot definitionally be claimed to be an obligation. When one of the parties to a transaction has breached a good faith requirement that non-breaching party may be said to be the ‘aggrieved party.’ The aggrieved party is entitled under the Code to resort to any remedy which is available to him. (UCC Sec. 1-201(2)). A ‘remedy’ means any remedial right to which *974 an aggrieved party is entitled with or without resort to a tribunal-. (UCC Sec. 1-201(34)). If the aggrieved party has any right at all which is remedial, that aggrieved party has a right to bring an action. An 1 “action” in the sense of a judicial proceeding includes recoupment, counterclaim, set-off, suit in equity and any other proceeding in which rights are determined. (UCC Sec. 1-201(1)).’ ” (Id., § 2:14, p 113.)
The author concludes that: “It seems only reasonable to conclude that a breach of good faith is sufficient to support a cause of action against the breaching party for which money damages ought to be available. The breach of good faith is a question of fact and if damages can be shown to have arisen out of it, it ought to be and is compensible [sic].” (Id., § 2:14, p 114.)
I agree with this reasoning. This interpretation, read together with those sections of the code promoting liberal construction and administration of remedies to an aggrieved party (Uniform Commercial Code, § 1-102, subds [1], [2]; § 1-106, subd [1]; § 1-103), authorizes a cause of action based solely upon breach of the good-faith requirement of this code (Uniform Commercial Code, § 1-203).
Accordingly, the claimant is entitled to recover damages from defendant in the sum of $291 which represents the loss resulting from the latter’s breach of the good-faith requirement. (Uniform Commercial Code, § 2-714, subd [1]; § 1-203.)

 See 3 Duesenberg & King, Sales & Bulk Transfers under the UCC, § 4.04(2). It does not follow however that if the modification is not procured by extortion, duress, or some such action, it necessarily is enforceable. Though Comment 2 of section 2-209 of the Uniform Commercial Code states that “The extortion of a ‘modification’ without legitimate commercial reason is ineffective as a violation of the duty of good faith”, there would seem to be no reason to read this comment as indicating approval of a modification without consideration, no matter what its objective, so long as it was not procured through “extortion”.