TONKA TOURS, INC., Respondent,

v.

Jay CHADIMA, Petitioner, Appellant,

and

Jack Harris, et al., Respondents.

No. C5–84–49.

Supreme Court of Minnesota.

Aug. 16, 1985.

John P. Lommen, Kay Nord Hunt, Lommen, Nelson, Sullivan & Cole, P.A., Minneapolis, for appellant.

Robert W. Kettering, Jr., Arthur, Chapman & Michaelson, Minneapolis, for Tonka Tours.

Harvey N. Jones, Hastings, for Jack Harris.

## OPINION

SCOTT, Justice.

Both appellant Tonka Tours, Inc. (Tonka Tours), and respondent Jay Chadima (Chadima) petitioned this court for further review of the Minnesota Court of Appeals' decision reversing and remanding the decision of the trial court in this case. Respondents Jack Harris and Harris Yacht Sales, Inc., joined the position set forth in the Chadima briefs.

Tonka Tours sued Chadima, the owner of a boat, and Harris and Harris Yacht Sales, the brokers of the boat, for breach of a purchase agreement. A trial was held before the Dakota County District Court without a jury. The trial court issued an order for judgment in favor of respondents. The trial court found that appellant accepted the boat on the closing date and failed to make an effective rejection or revocation. The trial court also found that appellant's conduct of closing the transaction, acceptance of the escrow sum for repairs, and "selection of a mechanic" modified the sales agreement, extinguishing respondents' obligations to complete repair items. The court of appeals reversed and remanded the trial court's decision, holding that appellant accepted the boat but at a date approximately three months later than the trial court's finding. However, the appellate court found that appellant's payment of the purchase price before delivery of the boat did not modify the terms of the contract because respondents' attempt at modification violated their duty of good faith. *Tonka Tours, Inc. v. Chadima*, 354 N.W.2d 519 (Minn.App.1984). We reverse.

Tonka Tours is a Minnesota corporation owned and operated by Richard G. Gray, Jr., and Scott Skibness. Tonka Tours was in the process of opening a charter tour business on Lake Minnetonka which was to commence in the 1982 spring-summer season. In the fall of 1981, Gray visited Harris Yacht Sales, Inc., in Prescott, Wisconsin, and spoke with Jack Harris, about purchasing a boat. Jay Chadima had retained Harris, a broker of marine equipment and boats, through an oral agreement to sell his 52-foot RiverMaster aluminum houseboat for him. Harris did not mention the RiverMaster on Gray's first visit, but called him a few days later and suggested he look at it. Since the boat had sat idle for several years, Gray eventually brought two mechanics from Tonka Bay Marine, Inc., to examine the boat and take it on a test drive. Certain repairs were agreed upon, and a purchase agreement was signed in mid-November, 1981. The purchase agreement called for a purchase price of $69,500 and stipulated that all repairs would be completed at the time of closing.

Gray testified that he told Harris as early as October 17 that he needed the boat in working condition by "ice-out" (approximately the middle of April on Lake Minnetonka). He needed the boat as soon as the lake was navigable in order to train the captains to operate it and to accomplish some renovation on the boat in order to accommodate large groups of people.

At the closing in February, 1982, Gray and Skibness were informed that the repairs had not been completed on the boat. Harris showed Gray a letter from a local mechanic, Ernest Weschke, confirming his engagement to do the repairs. Gray went ahead with the transaction and paid the full purchase price called for by the contract. He testified that he did so because he needed title to get the boat redocumented for the charter business and to obtain a loan. Gray agreed to an escrow of $875 to cover the cost of the repairs.

Weschke did little work on the boat between February and April 1, 1982, and subsequently went out of business. Jerry Peck then undertook to do the repairs. Peck estimated that the work would cost $2,000, but Harris only authorized repairs to the extent of the escrow.

On April 30, 1981, Harris told Gray that the boat would be ready as of May 1, 1982. Gray and Skibness arrived on May 1 to take the boat upstream to Stillwater, where Harris was to have a truck waiting so the boat could be transported to Minnetonka. Their objective was to have the mechanics

in the Tonka Bay area examine the boat to determine if the repairs met with their satisfaction.

Approximately one-half hour out of dock the engine on the boat "seized up," and the boat had to be towed back to Prescott. Inspection of the boat disclosed that a defective transmission bearing had caused the V-drive to bind. The defect was not apparent prior to May 1, 1982. The repairs were completed on May 12, 1982. Gray called Harris shortly after May 1 and canceled the sale. This was confirmed by a letter from Gray's attorney May 12, 1982.

The issues presented by this appeal are:

(1) Was the court of appeals' decision, finding that appellant accepted the boat after May 1, correct?

(2) Was the court of appeals correct in holding that no modification of the sales contract had taken place?

■ 1. In this case Tonka Tours did not move for a new trial, but merely appealed from the judgment. Findings of fact made by a trial court sitting without a jury will not be set aside unless they are clearly erroneous, with due regard for the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. It has been held that when the lower court is the trier of fact, its findings on disputed questions are entitled to the same weight as a jury verdict and will not be upset merely because a reviewing court may view the evidence differently. *See State v. Simonsen*, 252 Minn. 315, 324, 89 N.W.2d 910, 916 (1958). The findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole. *N.S.P. v. Lyon Food Products, Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

The contract between Tonka Tours and Chadima, with Harris as broker, described the boat and provided that the following items must be repaired:

"1. Port engine' temp. gauges.

2. 12V system and equipment checked & repaired as necessary.

3. Port engine and transmission *repaired per satisfaction* of R.G. Gray, Jr.

4. Rail uprights replaced & repaired as necessary.

5. Generator repair as necessary."

(Emphasis added.)

Under that part of the contract labeled "Terms," the contract provided for the money terms and then stated, "Boat must be operative and repairs completed before closing, Payment date. Harris Yacht Sales to pay up to $500.00 freight charges and other costs involved in moving boat to Lake Minnetonka."

Tonka Tours has abandoned any claim of revocation. It has maintained throughout this lawsuit that it rejected the boat before any acceptance took place. Chadima maintains that an acceptance took place at the time of the closing.

The trial court in its finding of facts found that "[s]uch conduct [closing the transaction on February 17, 1982, accepting the escrow sum and selecting a mechanic] signified to Defendants that the boat conformed to Plaintiff's expectation and that Plaintiff accepted and intended to retain the boat in its condition at closing date." The court further found that "[n]o substantial impairment to the boat resulted from the defective transmission bearing discovered on May 1, 1982, and by reason thereof the attempted revocation of the transaction was ineffective."

The court of appeals transposed the transaction, and came to the following conclusions: that Gray and Skibness had a right to inspect the boat prior to acceptance, and that payment prior to that inspection did not impair any of their remedies. Therefore, none of the actions prior to May 1, 1982, was an acceptance. The court of appeals, however, concluded that "[a]ppellant's authorization of repairs after inspection [on May 1] was inconsistent with their claim of rejection," thereby finding that appellants accepted the boat. *Tonka Tours*, 354 N.W.2d at 521.

The Uniform Commercial Code as enacted in Minnesota provides that:

(1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;

or

(b) fails to make an effective rejection (subsection (1) of section 336.2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them;

or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

Minn.Stat. § 336.2–606(1) (1984).

■ It is clear that whether a buyer has accepted goods is unrelated to whether title has passed from the seller to the buyer. *Id.* § 336.2–401 (1984). Further, as the court of appeals correctly noted, a buyer has a right to inspect goods prior to acceptance. *Id.* § 336.2–513(1) (1984). When a contract requires payment prior to inspection, payment "does not constitute an acceptance of goods or impair the buyer's right to inspect or any of his remedies." *Id.* § 336.2–512(2) (1984). *See Shelton v. Farkas,* 30 Wash.App. 549, 635 P.2d 1109 (1981) (when payment is required by the seller before the goods may be taken from the seller, the fact that the buyer paid the purchase price is not controlling).

■ Payment before receipt of the goods, however, was only one factor in the trial court's finding that acceptance took place at the closing. In reviewing the trial court's decision on the acceptance issue, the court of appeals failed to mention the other two factors that played a part in its decision that acceptance had taken place. The trial court found that the escrow sum and the selection of a mechanic, *combined with* payment of a purchase price, constituted enough confirmation that acceptance had taken place. In order to find different-

ly, the court of appeals had to determine that such a finding was clearly erroneous. Despite its narrow standard of review, the court of appeals, after reviewing the transcript, did not find the determination of acceptance clearly erroneous but found that acceptance had merely occurred at a date different than when the trial court found. Such an exercise is futile. The court of appeals' duty as a reviewing court is not to substitute its own judgment for that of the trial court, particularly when coming to the same ultimate conclusion as that court but simply finding that such acceptance took place on another day.

■ In reviewing the transcript we cannot say that the trial court's finding is not supported by the evidence as a whole. It is undisputed that to the knowledge of all parties at the closing, the repairs that were contemplated by the purchase agreement had not yet been completed. At the closing Gray recognized that he had the right to choose the mechanic for the boat and that Chadima would pay for the repairs. The sum of $875 was escrowed at the closing for the cost of the repairs. This amount was established from an estimate given by a mechanic. At the closing Gray paid the agreed purchase price and considered himself the owner of the boat. Gray, with the assistance of Harris, retained Prescott Marine Service to complete the necessary repairs. Finally, on May 12, repairs were completed on the boat and it was fully operational. When reviewing this evidence, we must conclude that the court of appeals was incorrect in substituting its judgment for that of the trial court.

2. The trial court held that appellant's actions in paying the full purchase price, accepting the escrow sum for repairs, and "selecting" a mechanic on the closing date effectively modified the terms of the contract such that it changed the rights and remedies of the parties. It found that appellant accepted and intended to retain the boat in its condition at the closing date. Consequently, the trial court held that the respondent's obligation to complete the list-

ed repair items was extinguished. The court of appeals found the conclusion of modification erroneous. *Tonka Tours*, 354 N.W.2d at 522. The court of appeals determined that payment of the purchase price prior to delivery of the boat did not modify the terms of the contract nor impair any of the buyer's rights or remedies. *Id.* The court of appeals did not touch upon the issues of the escrow sum or the selection of a mechanic. If, however, there was a modification, the court of appeals found that the modification did not satisfy the U.C.C. requirement of good faith under Minn.Stat. § 336.2–103(1)(b) (1984). 354 N.W.2d at 522.

▮ At common law, the rule was that if a party did or promised to do what he was already legally obligated to do, there existed no sufficient consideration to support this new promise. *Palmer v. Safe Auto Sales, Inc.*, 114 Misc.2d 964, 452 N.Y. S.2d 995, 996 (N.Y.Civ.Ct.1982). This was the pre-existing duty rule. The U.C.C. as adopted in Minnesota rejects the pre-existing duty rule. Under Minn.Stat. § 336.2–209 an agreement that changes a prior contract is called a modification. Subdivision 1 of that section provides that "[a]n agreement modifying a contract within this article needs no consideration to be binding." *Id.*

▮ The only issue before the court of appeals was whether the evidence sustained the findings of fact and whether such findings sustained the conclusions of law and the judgment. Given that narrow standard of review, the court of appeals clearly exceeded its duty. In reviewing the evidence, Gray's testimony at trial provides substantial evidence supporting the trial court's finding of an enforceable oral modification. Gray admitted that at the time of closing he was aware that the repairs contemplated by the purchase agreement had not been completed, that an amount was to be placed in escrow for the purpose of paying for repairs, and that he had the right to have the work done anywhere he chose. Admissions are sufficient to vitiate a claimed statute of frauds defense. *Jurek*

*v. Thompson*, 308 Minn. 191, 202, 241 N.W.2d 788, 793 (1976).

The contract clearly called for repairs to be completed before closing. The closing date came, the repairs were barely started, yet the transaction continued. Gray certainly had a right to call the transaction off or, at the very least, to delay the closing until the repairs were completed. Gray, however, chose neither and, anxious to close the transaction, on his own impetus went ahead and completed the purchase.

▮ The court of appeals, in its analysis, appeared to confuse acceptance of the oral modification with acceptance of the chattel. The court of appeals stated that one of the reasons it found the trial court erroneous was that "the trial court's finding was based, in part, upon an incorrect finding that appellant accepted the boat on February 17, 1982." Acceptance of the boat itself had nothing to do with the formation of the contract for sale or its oral modification.

▮ As to the court of appeals' discussion of good faith, Tonka Tours never asserted at the trial court level that Chadima's conduct was not in good faith. Determination of what constitutes good faith necessarily involves factual findings. *See McDonald v. Stonebraker*, 255 N.W.2d 827, 831 (Minn.1977). It is for the trier of fact to evaluate the credibility of a claim of "honesty in fact" and, in doing so, to take account of the reasonableness or unreasonableness of the claim. It was outside the court of appeals' authority to make such a factual finding on its own. Upon review of the record it appears that the trial court was correct in concluding that by allowing the creation of an escrow account the appellant agreed to accept that sum of money and select a mechanic who would repair the boat. The court of appeals went beyond its standard of review and simply substituted its judgment for that of the trial court. Therefore, we reverse the court of appeals and reinstate the trial court's judgment.

Reversed.