**In re ESTATE OF Albert J. WENTWORTH, deceased.**

**In re GUARDIANSHIP OF Delta C. WENTWORTH.**

**No. C4–89–1941.**

Court of Appeals of Minnesota.

March 20, 1990.

---

David P. Lamm, Lamm, Lamm & Nelson, Mankato, for respondent Estate.

Donald C. Steiner, Donald C. Steiner, P.A., Rochester, for appellant Lueck.

Considered and decided by PARKER, P.J., and FORSBERG and NORTON, JJ.

## OPINION

FORSBERG, Judge.

On April 26, 1989, Albert Wentworth died. He was survived by his widow, Delta. Albert's will left his entire estate to his nieces and nephews. Delta, through her special conservator, Phyllis Lueck, petitioned to elect against Albert's will and to receive maintenance, personal property, and the homestead. Delta appeals the district court's denial of her petition.

## FACTS

In 1965 or 1966, widower Albert Wentworth, age 75, and widow Delta Wentworth, age 67, were married. Albert had no children by his prior marriage; Delta had a daughter, Phyllis Lueck.

Soon after their marriage, Albert and Delta executed wills. Albert's will left his homestead and, after a few minor specific devises, one-half of his estate to Delta. On January 12, 1989, Albert signed a new will, which revoked his 1966 will and completely disinherited Delta. Albert's will states:

My wife, Delta C. Wentworth, presently owns a 160–acre farm near Truman, Minnesota, and has a bank account in connection with that farm which presently contains about $18,000.00. She also has $30,000.00 of money market certificates on which she has placed the name of Phyllis Lueck as co-owner. I own my homestead and certain stocks in my name alone. Both the home and the stocks were owned by me alone prior to my marriage to Delta C. Wentworth, and I wish to leave these items to my blood relatives and their spouses. Since the farm, bank account, and money market certificates owned by my wife would provide adequate support for her during her probable life expectancy, I do not feel it is necessary to provide for her support with assets presently owned in my name alone. I consented to the Last Will and Testament of Delta C. Wentworth which provided nothing for me. I am, therefore, making no provision in this, my Last Will and Testament, for either my wife, Delta C. Wentworth, or her daughter, Phyllis Lueck, and it is not to be presumed that I have forgotten them.

On April 26, 1989, Albert died.

Delta had been receiving 24–hour live-in aid for five years. She was unable to care for herself or her affairs. On May 9, 1989, Phyllis Lueck petitioned the district court to appoint her as special conservator of Delta's person and estate. In her petition, Phyllis asked the court to exercise Delta's right to elect a one-third share of Albert's augmented estate, rather than take nothing under Albert's will. On June 5, the court found Delta to be a "protected person" and appointed Phyllis as Delta's special conservator.

On June 6, Phyllis petitioned the court to award Delta $4,000 per month in maintenance and $9,000 in personal property. Phyllis later petitioned the court to assert Delta's homestead right.

On July 19, following a hearing on Phyllis' petitions, the court found Delta's property and income sufficient to support her for her probable life expectancy of 3.45 to 5.07 years. The court denied Delta's claims for maintenance, personal property, the homestead, and the elective share.

On September 12, following a second hearing on August 8, the court issued amended findings of fact, conclusions of law, and an order, clarifying some of the language in its July 19 findings, but leaving the substantive portions of those findings unchanged. Delta filed her notice of appeal on October 26. On December 12, Delta died.

## ISSUES

1. Did the trial court clearly err in finding Delta did not need her elective share or maintenance?

2. Did the trial court err in denying Delta her homestead rights?

3. Did the trial court err in denying Delta her personal property rights?

4. Does Delta's death affect the disposition of this appeal?

## ANALYSIS

### I.

A district court's findings of fact will not be set aside unless they are clearly erroneous. Minn.R.Civ.P. 52.01. To reverse a court's findings, they "must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 726 (Minn.1985).

■ 1. *The Elective Share.* Under Minn.Stat. § 524.2–201, a surviving spouse may forfeit any and all gifts under the

deceased spouse's will and instead take one-third of the deceased spouse's "augmented estate," as that term is defined by Minn.Stat. § 524.2–202. However, if the surviving spouse is a "protected person," as defined by Minn.Stat. §§ 524.1–201(34) and 525.54, subd. 2, then:

> [T]he right of election may be exercised only by order of the court in which protective proceedings as to the protected person's property are pending, after finding (1) that exercise is necessary to provide adequate support for the protected person during the protected person's probable life expectancy and (2) that the election will be consistent with the best interests of the natural bounty of the protected person's affection.

Minn.Stat. § 524.2–203 (1988).

The court found Delta to be a protected person with a probable life expectancy of between 3.45 and 5.07 years. The court also found Delta's considerable assets were sufficient to provide for her support during that probable life expectancy. These findings are reasonably supported by the evidence, and support the conclusion that Delta did not need her elective share.

2. *Maintenance.* Under Minn.Stat. § 525.15(4), the surviving spouse "shall be allowed *reasonable* maintenance." (Emphasis added.) If the surviving spouse disagrees with the personal representative's decision regarding maintenance, then she may petition for additional maintenance. Minn.Stat. § 525.151.

> In determining a reasonable amount of maintenance, the court should take into account the value of the estate, the previous standard of living, and the nature of other resources available to the [surviving spouse] to meet current living expenses. * * * Need is relative to the circumstances, and what is reasonable must be decided on the basis of the facts of each individual case.

*In re Estate of Cassius,* 392 N.W.2d 327, 329 (Minn.Ct.App.1986) (citing Uniform Probate Code § 2–403 comment).

The personal representative of Albert's estate did not provide any maintenance for Delta. Delta petitioned for maintenance in the amount of $4,000 per month. In concluding Delta was not entitled to maintenance, the court stated:

> [Delta] has not shown any need for maintenance. While her monthly expenses are very high, she also has a very large personal estate. By selling the farm she could raise a large amount of money which would easily meet her reasonable monthly expenses for the rest of her expected life. She has no dependents to provide for and no debts. Based on the facts of this case and the circumstances of [Delta's] life, no maintenance is necessary or will be necessary for the foreseeable future.

Again, the court's findings are not clearly erroneous.

## II.

■ A surviving spouse is entitled to the homestead, even if the homestead is otherwise disposed of in a will and even if the surviving spouse does not or cannot elect against the deceased spouse's will. Minn. Stat. § 525.145. Under Minn.Stat. § 524.2–205(f), the surviving spouse "*may* elect statutory rights in the homestead by filing * * * a petition in which the spouse asserts the right provided in section 525.-145 * * *." (Emphasis added.) The petition notifies the personal representative of the time and place for a hearing, and is the same type of petition a surviving spouse would file to elect her one-third share in the augmented estate. Minn.Stat. § 524.2–205(a) and (b) (1988).

In this case, the court found Delta could not personally exercise her right in the homestead because she was an incapacitated person. Instead of allowing Phyllis, Delta's special conservator, to exercise the right, the court decided it should exercise Delta's homestead right. The court further applied the same analysis it used to determine whether Delta should receive the elective share, and concluded Delta must first need the homestead to provide her adequate support during her probable life expectancy. Because the court found Delta's own assets were sufficient to provide for her adequate support during her proba-

ble life expectancy, it determined she was not entitled to the homestead. We believe this analysis is incorrect.

If it were not for Minn.Stat. § 524.2–203, a surviving spouse, incapacitated or not, would be allowed to take the elective share regardless of need. Minn.Stat. § 524.2–201 (1988). While the legislature limited the right to elective share by enacting Minn. Stat. § 524.2–203, the legislature did not enact a similar provision limiting the homestead right. The court states in its memorandum, "There is no support for [Phyllis'] claim that the guardian of the protected person automatically stands in the shoes of the disinherited spouse, thereby obtaining for [Delta] some form of right in the homestead without any showing of need." There is no support, however, for the court's determination it alone may exercise the homestead right for an incapacitated surviving spouse, and only after a finding of need.

The court appointed Phyllis to be Delta's special conservator for the specific purpose of exercising Delta's rights in the elective share, the homestead, maintenance and personal property. While Phyllis could not exercise Delta's elective share right because of Minn.Stat. § 524.2–203, there are no statutory provisions preventing Phyllis from exercising Delta's homestead right.

The estate argues because Minn.Stat. § 524.2–205(f) merely provides a surviving spouse *may* exercise her homestead right, the homestead does not automatically descend to the surviving spouse. This is true. In order to receive the homestead, given to another under a will, the surviving spouse need only petition the court. Minn. Stat. §§ 525.145(4); 524.2–205(f). In this case, Delta's special conservator filed such a petition and exercised the right to the homestead.

The estate also argues because the petition for the homestead is similar to the petition for the elective share, the court properly applied the elective share analysis (which requires need during probable life expectancy) to the exercise of the homestead right.

Although the petition used to exercise the homestead right is procedurally similar to the petition used to take the elective share, the determination of whether to grant the petition is not the same. The elective share is governed by Minn.Stat. §§ 524.2–201—524.2–203. The homestead right is governed by Minn.Stat. § 525.145. We therefore conclude the court erred in denying Delta her homestead right.

### III.

■ Minn.Stat. § 525.15(1) provides in pertinent part:

> The surviving spouse *shall be allowed* from the personal property of which the decedent was possessed or to which the decedent was entitled at the time of death, the wearing apparel, and, as selected, furniture and household goods not exceeding $6,000 in value, and other personal property not exceeding $3,000 in value * * *.

(Emphasis added.) The personal representative of the decedent's estate *"may* make these [personal property] selections if the surviving spouse * * * [is] unable * * * to do so * * *."* Minn.Stat. § 525.151 (emphasis added). If the surviving spouse disagrees with the personal representative's determination, she may petition the trial court for "appropriate relief." *Id.*

In this case, Delta was not able to make her selections of personal property because she was incapacitated. The personal representative of Albert's estate determined she was not entitled to any personal property. Phyllis, as Delta's special conservator, petitioned the court for the personal property. The court applied the same analysis it used to determine whether Delta was entitled to reasonable maintenance to determine whether Delta was entitled to personal property.

The provision allowing personal property, Minn.Stat. § 525.15(1), does not limit the personal property to a reasonable amount. Instead, it puts caps of $6,000 and $3,000 on personal property allowances. Thus, the statute specifically permits the surviving spouse to take any amount up to those limits in personal prop-

erty. Under Minn.Stat. § 525.15(1), the need of the surviving spouse is not a factor to be used by the court in determining an award of personal property.

Because the court ruled Delta was not entitled to any personal property, it did not make any findings regarding the value of the personal property of Albert's estate. We therefore remand this issue for findings on the value of the personal property in Albert's estate and distribution according to Minn.Stat. § 525.15(1).

## IV.

■ The general rule is, despite the death of a party to a civil case, an appeal will survive. *See, e.g., Howard v. Wilbur,* 166 F.2d 884, 885 (6th Cir.1948). However, "if the question presented by an appeal has become moot the appeal will be dismissed by the appellate court without a ruling on the merits." *Id.*

■ Delta's death has no effect on this appeal. There is still a dispute as to who should have paid for Delta's care and well-being from the time of Albert's death until the time of her death (maintenance), as well as whether certain assets (the elective share, the homestead, and personal property) should be placed in Albert's estate and distributed according to his will, or in Delta's estate and distributed according to her will.

## DECISION

We affirm the court's denial of Delta's petitions for the elective share and maintenance. We reverse denial of her petitions for the homestead and personal property. We remand for determination of the value of Albert's personal property and distribution of that personal property to Delta under Minn.Stat. § 525.15(1).

Affirmed in part, reversed in part and remanded.