PRAHMCOLL PROPERTIES,
Respondent,

v.

T. Denny SANFORD, Appellant,

Whitfield Corporation, Defendant.

No. CX–91–342.

Court of Appeals of Minnesota.

Aug. 27, 1991.

Phillip R. Krass, Krass & Monroe Chartered, Bloomington, for respondent.

Sidney P. Abrahmson, Robins, Kaplan, Miller & Ciresi and Kathleen L. Kuehl, Minneapolis, for appellant.

Thornton Anderson, Edina, for defendant.

Considered and decided by RANDALL, P.J., and HUSPENI and THOREEN *, JJ.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

RANDALL, Judge.

Sanford appeals from a judgment in favor of respondent vendor for the outstanding balance due on a contract for deed. The trial court held that appellant, as assignee, assumed the obligations of Whitfield Corporation, the assignor and original vendee. Sanford contends the trial court drew erroneous conclusions of law from the facts. We disagree and affirm.

## FACTS

On September 12, 1986, respondent Prahmcoll Properties (Prahmcoll) sold a 15 acre parcel in Scott County to Whitfield Corporation (Whitfield) by a contract for deed (CD). The property was located on the northern boundary of the Canterbury Downs Racetrack in Shakopee. The CD provided that Whitfield would make a $190,000 downpayment and quarterly payments of $7,929.48 until May 1, 1989, when the balance of $233,964.60 would become due. The CD contained a provision where, for every $40,000 paid to Prahmcoll, one acre of the parcel would be conveyed to Whitfield by warranty deed.

Whitfield's president and sole shareholder, Thornton Anderson, obtained funds for the downpayment from Alexander and Lucy Levitan. Anderson gave the Levitans a promissory note secured by a letter of credit supplied by appellant, T. Denny Sanford (Sanford). Sanford had earlier provided approximately $25,000 for Whitfield to conduct initial development studies on the parcel. Sanford also provided the funds for Whitfield to make its first two quarterly payments. After February 1987, there were no further payments running from Whitfield to Prahmcoll. In March of 1987 Whitfield was unable to repay the promissory note to the Levitans, and Sanford was required to make good on his letter of credit. That cost Sanford $199,500. Through March 1987, Sanford had provided approximately $225,000 in funding related to Whitfield's purchase of the parcel.

Whitfield's plans for developing the parcel were unsuccessful and Anderson developed a strategy to sell the property. Sanford expected to be reimbursed for the money he had advanced and also share in the proceeds 50/50 when the property was sold. Whitfield had difficulty finding a purchaser for the land. On March 4, 1987, Whitfield (through Anderson) and Sanford entered into an agreement which provided:

In consideration of funds advanced to Whitfield by T. Denny Sanford, Whitfield agrees to assign to Sanford its interest in the * * * property on April 3, 1987, unless one of the two following events occur:

1.  A signed purchase agreement for the sale of said property's produced by Whitfield by April 3, 1987, with a closing to take place within 60 days of date of said purchase agreement, or;

2.  Sanford is paid the sum of Two Hundred Fifteen Thousand Five Hundred and no/100 ($215,500.00) dollars by March 15, 1987, in which case Sanford will release any and all claims relating to funds advanced to Whitfield and/or Meriden Corporation, a Minnesota Corporation.

On May 12, 1987, in accord with the March 4 agreement, Whitfield executed a quitclaim deed on the parcel to Sanford, and submitted an assignment agreement for Sanford's signature. The quitclaim deed conveyed the parcel to Sanford "subject to all covenants, easements and encumbrances of record." The assignment agreement submitted to Sanford provided that Whitfield was assigning its interest in the contract for deed on the parcel to Sanford "subject to covenants, easements and encumbrances of record," and "subject to all the covenants of said assignor in said contract contained, which [Sanford] hereby assumes and agrees to keep and perform."

The assignment agreement incorrectly identified the interest being assigned as that of a "vendor" rather than that of a "vendee." Anderson, who made the inadvertent mistake, signed the agreement, but Sanford did not. Anderson testified that, although he accidentally interchanged "vendor" and "vendee," all other language whereby Sanford, as assignee, was to assume all covenants and obligations under the CD was correct.

On May 13, 1987, Sanford sent a letter and a check for the May 1987 quarterly payment to Prahmcoll. The letter provided:

Please be advised that *I am now the owner* of the property, Outlot A, Prahmcoll First Addition, previously owned by the Whitfield Corporation *and recognize your contract for deed thereon.*

Please *change your records* accordingly and *notify me of any significant matters concerning the property.*

Enclosed is your May check for that property.

(Emphasis added).

Upon receipt of the letter, Prahmcoll contacted Sanford and requested all future payments be made directly to Prahmcoll's bank. Sanford agreed to this payment procedure. Sanford made the quarterly payments through the end of 1988 (Aug. 1, 1987; Nov. 1, 1987; Feb. 1, 1988; May 1, 1988; Aug. 4, 1988; and Dec. 12, 1988). Sanford never told Prahmcoll that his interest in the property was "only security" for the money he had provided Whitfield.

On August 4, 1988, along with the quarterly payment, Sanford sent a letter to Prahmcoll which provided in part:

As you know, the vendee's interest in the referenced contract for deed was assigned to me. Section 4 of the contract provides that the Seller will release acreage, by warranty deed, from the contract for deed upon payment of principal at a rate of $40,000.00 per acre.

I have enclosed with this letter a check in the amount of $10,000.00. To date, you have now received $200,000.00 in principal under the contract for deed. Per Section 4 of the contract, the vendee is accordingly entitled to receive a warranty deed from you to five (5) acres of land.

Prahmcoll notified Sanford he would need to file satisfactory evidence of the assignment of the contract for deed with the county before a warranty deed on five acres would be issued.

Sanford immediately contacted Anderson and requested him to sign a new back dated quitclaim deed and assignment agreement which Sanford had prepared. This new quitclaim deed presented to Anderson specifically omitted the language, "subject to all covenants, easements, and encumbrances of record," which had been in the original deed (the original CD is the one Anderson prepared which improperly reversed the terms "vendee" and "vendor"). Sanford's redrafted assignment agreement corrected this erroneous designation, but specifically omitted the language, "subject to covenants, easements and encumbrances of record." The redrafted assignment agreement also omitted the language "subject to all the covenants of said assignor in said contract contained, which [Sanford] hereby assumes and agrees to keep and perform." Sanford replaced that original language with the following language (all favorable to himself): "subject to all provisions of and the covenants of assignor in said contract for deed contained, which assignee has not assumed nor agreed to keep and perform."

Anderson did not sign either redrafted document, and Sanford had to file the original quitclaim deed from Whitfield. Sanford made the November 1, 1988, quarterly payment on the contract for deed on December 12, 1988, and Prahmcoll conveyed five acres of the parcel to Sanford by warranty deed. To record the deed to the five acres Sanford had to pay the outstanding taxes on the entire 15 acre parcel. The CD provided that the vendee would pay all taxes on the parcel.

The final quarterly payment was due on February 1, 1989. Sanford did not make this payment. When Prahmcoll contacted Sanford to inquire about the money, Sanford said he would be making no more payments on the CD.

The trial court's key legal conclusion found that Sanford assumed both the rights and obligations under the CD and was now in breach of contract by not making the final quarterly payment and the balloon payment. Judgment was entered for Prahmcoll in the amount of $237,049.93 plus interest. The trial court ordered that if Sanford satisfied the judgment, Prahmcoll had to convey the remainder of the parcel by warranty deed to him.

There were no post-trial motions. Sanford appeals from the judgment claiming the trial court drew an erroneous conclusion of law from its findings of fact.

## ISSUE

Did Sanford, as an assignee of a contract for deed vendee, assume the monetary obligations of Whitfield Corporation, the assignor and original vendee purchasing from Prahmcoll?

## ANALYSIS

### Assumption

■ With no post-trial motions, the only issue is whether the evidence sustains the findings of fact and whether the findings sustain the conclusions of law. *See Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 728 (Minn.1985). The findings of fact will be overturned only if clearly erroneous. *Id.* at 726.

Sanford does not challenge the findings of fact. Sanford argues the trial court's conclusions of law on these facts are erroneous. He essentially argues that he holds only a security interest and did not have to assume Whitfield's unpaid balance when he took the assignment from Whitfield. At issue is the trial court's conclusion of law that Sanford assumed and has to pay the unpaid balance Whitfield owes Prahmcoll under the CD.

■ The assumption of the obligations can be expressed or implied. 6 Am.Jur.2d, *Assignments,* § 109 (1963).

Generally, an assignment of a contract does not operate to bind an assignee to the duties and obligations imposed upon the assignor by the contract unless the assignee directly assumes such obligations.

*Borer v. Carlson,* 450 N.W.2d 592, 594 (Minn.App.1990), *pet. for rev. denied* (Minn. March 8, 1990).

■ We recognize that obligations of an assignor may be assumed by an assignee, depending on the facts, although no express assumption is contained in the assignment agreement. In *Borer*, the trial court granted summary judgment dismissing the action against the assignee. The assignment contract in *Borer* contained a clause on behalf of assignee specifically denying liability on "any other obligation or liability." *Id.* at 594. We reversed summary judgment by finding that, notwithstanding the liability limitation clause in the assignment contract, there was a material fact dispute as to whether the assignee subsequently acknowledged liability for the assignor's obligations through the actions of an agent. *Id.* at 594–95. *Borer* allows for the possibility of assumption of liability by an assignee by means other than an express clause in an assignment contract.

■ At times, totality of the fact situation has to be looked at to determine exactly what obligations of the assignor the assignee agreed to assume. In *Midtaune v. Burns*, 434 N.W.2d 474 (Minn. App.1989), *pet. for rev. denied* (Minn. March 29, 1989), although an assignment agreement between vendees (assignors) and a bank (assignee) provided that assignee would assume and perform the assignors' obligations, we refused to allow the vendor to obtain payment on a contract for deed from the assignee bank because, on the facts, the intention of the assignment was only to give the assignee a security interest. *Id.* at 476–77. Here, where there is no written assignment executed, we look to the surrounding facts to determine whether Sanford expressly or impliedly assumed Whitfield's obligations under the CD running from vendor Prahmcoll to vendee Whitfield. Here, the pertinent facts show the trial court properly found that Sanford assumed Whitfield's monetary obligations.

Sanford wrote a letter identifying himself as successor in interest to Whitfield, and expressly acknowledged Prahmcoll's contract for deed so that he might avail himself of its benefits. Sanford wrote to Prahmcoll on May 13, 1987, the day after receiving the assignment of interest in the CD from Whitfield, and stated:

> Please be advised that *I am now the owner of the property,* Outlot A, Prahmcoll First Addition, previously owned by the Whitfield Corporation *and recognize your contract for deed thereon.*
>
> Please *change your records* accordingly and *notify me of any significant matters concerning the property.*

(Emphasis added). This letter from Sanford to Prahmcoll is a written assumption of Whitfield's obligations.

Sanford, while still claiming benefits under the CD, argues that his recognition of the contract for deed is irrelevant. He argues a different legal conclusion should be drawn despite this seeming acceptance of the obligations by his words. We disagree. The relevance of his recognition of the CD is strong in light of his further direction to Prahmcoll to conduct all business regarding the land with himself rather than Whitfield. Sanford's approach was that of an owner, not a mere secured lender to Whitfield. As a true owner/assignee of Whitfield's vendee's interest under the CD, Sanford is entitled to the benefits but correspondingly is legally subjected to Whitfield's obligations, including full payment of the purchase price.

Whitfield's president, Thornton Anderson, testified the only mistake he made in drafting the assignment agreement was to inadvertently use the word "vendor" rather than "vendee" while identifying the interest being assigned to Sanford. He stated that the inclusion of the phrases "subject to covenants, easements and encumbrances" reflected the intentions of himself and Sanford. When Sanford asked Anderson to sign a redrafted and back dated quitclaim deed and assignment, Sanford's redrafted documents did more than simply correct a typographical error calling the vendor a vendee. The redrafted documents removed the phrase "subject to [all] covenants, easements and encumbrances" from both documents. In the assignment agreement, Sanford replaced the language "subject to all the covenants of said assignor in said contract contained,

which [Sanford] hereby assumes and agrees to keep and perform" with language providing "subject to all provisions of and the covenants of assignor in said contract for deed contained, which assignee has not assumed nor agreed to keep and perform." .

Sanford's redrafting the documents to his advantage was not accidental. The extensive changes were intended by Sanford to give him the right to buy all or part of the land if he wanted to, but to relieve himself of personal liability for Whitfield's obligations if the purchase price turned out to be a bad deal.

We find Sanford's letter stating he was the new owner and recognized the CD to be express recognition and assumption of both rights *and obligations* therein.

The May 13th letter not only identified Sanford as the owner but also contained a quarterly payment in compliance with the terms of the CD. Sanford made all quarterly payments through August of 1988, and even paid additional funds to bring the total principal paid on the CD up to approximately $200,000. Sanford paid the extra amount for the express purpose of invoking the CD provision which required Prahmcoll to convey one acre by warranty deed for each $40,000 paid.

Prior to filing the warranty deed for the five acres, Sanford satisfied outstanding taxes on the entire 15 acre parcel. The CD so provided that the vendee would pay all taxes.

Sanford acted at all times consistent with the actions of a buyer/vendee under a CD. His actions show an intent to assume both the benefits and the obligations of Whitfield's position as a CD vendee buying from Prahmcoll. *See e.g., Borer*, 450 N.W.2d at 594 (Despite written exclusion of liability, summary judgment reversed because factual issue existed as to whether assignee's agent subsequently assumed assignor's obligations).

Sanford contends that by obtaining the warranty deed to the five acres he was merely exercising a benefit which was assigned to him. His argument is basically that "assumption of contract benefits does not necessarily imply assumption of its obligations." *Borer*, 450 N.W.2d at 594. However, the benefit Sanford wanted assigned to him could only be realized upon satisfaction of the monetary obligations contained in the CD.

"[T]he assignee may not enforce the contract against the other contracting party until the obligations which the contract imposes have been performed by some one." *Pioneer Loan & Land Co. v. Cowden*, 128 Minn. 307, 310, 150 N.W. 903, 904–05 (1915).

■ Finally, Sanford contends that his interest in the contract for deed was "merely" a security interest. He cites *Midtaune*, 434 N.W.2d at 476–77, for the proposition that when an assignment is made only as security the assignee does not assume any of the assignor's personal liability. *Midtaune* is distinguishable. Its facts do not in any way support Sanford's "security only" argument.

In *Midtaune*, the vendees on a contract for deed obtained a loan from a bank. The vendees assigned their interest in the property to the bank as security for the loan. The security interest of the bank was spelled out and both parties agreed it was security only. Also, unlike here, the vendees did not execute a quitclaim deed to the bank. At all times, in *Midtaune*, the vendees retained possession of the property. The bank made no payments under the CD to the vendor, never possessed the property, and made no claim of ownership. *Id.* at 476. When the vendees failed to make payments to the vendor, the vendor attempted to hold the bank liable, as the assignee, for the payments. We held:

[W]hen an assignment is made for security only, even if it be, on its face, unconditional, the vendee still retains an equitable interest in the contract, and on satisfaction of the obligation secured thereby, he is entitled to a reassignment thereof. In such a case there is no assumption of the contract debt by the assignee, * * *

*Id.* at 477 (quoting *General Elec. Co. v. Levine,* 50 Mich.App. 733, 736, 213 N.W.2d 811, 814 (1973)).

The only testimony that the assignment to Sanford was a "security interest" came from Sanford. The trial court did not find as a fact that the assignment was a security interest. This court gives "due regard for the opportunity of the trial court to judge the credibility of the witnesses." *Tonka Tours, Inc.,* 372 N.W.2d at 726. Sanford's own testimony indicates his interest was as an investor rather than a mere lender. Sanford testified he expected to share 50/50 in the proceeds of the sale of the 15 acre parcel if Anderson had been able to sell. Following Anderson's inability to sell the parcel, Sanford took a deed, recorded it, and paid extra on the unpaid balance to exercise his right to take a portion of the parcel before the full balance was paid. Prior to trial, Sanford never indicated his interest in the property was limited to security for borrowed funds.

Finally, the March 4, 1987, agreement was not a typical lender's security interest form. The agreement provided:

> In consideration of funds advanced to Whitfield by T. Denny Sanford, Whitfield agrees to assign to Sanford its interest in the * * * property on April 3, 1987, unless one of the two following events occur:
>
> 1. A signed purchase agreement for the sale of said property's produced by Whitfield by April 3, 1987, with a closing to take place within 60 days of date of said purchase agreement, or;
>
> 2. Sanford is paid the sum of Two Hundred Fifteen Thousand Five Hundred and no/100 ($215,500.00) dollars by March 15, 1987, in which case Sanford will release any and all claims relating to funds advanced to Whitfield and/or Meriden Corporation, a Minnesota Corporation.

Through the operation of either of the exceptions to the assignment requirement, it is clear the parties intended to satisfy and sever the relationship between Whitfield and Sanford by making Sanford the owner.

Whitfield did not keep any right of reassignment or redemption.

The trial court drew the proper legal conclusion from the facts. Sanford took over Whitfield's position as the vendee on a contract for deed and with that position assumed all the benefits and all the obligations. One of those obligations was to pay the complete purchase price to seller Prahmcoll.

## DECISION

Sanford expressly, and by his actions, assumed Whitfield's obligations on the contract for deed to Prahmcoll. The trial court properly entered judgment in favor of Prahmcoll.

Affirmed.